The next case called for oral argument is in the matter of the application of the County Collector and a number of other parties I'm not even going to go through. And Council, whenever you're ready, you may proceed. Thank you. Good morning, Your Honor. Good morning. May it please the Court, Council, for the audio record, my name is Curt Blood and I represent William and Vicki Groome and of all these names on this cover. The only ones that matter are the real opponents, which is the Gulley voters, the only party other than Groome's represented in this courtroom. And Groome's had a tax deed, well, received a tax deed, and the Circuit Court of Hamilton County voided the tax deed, vacated the order directing that they be issued a tax deed, voided the tax deed. And we're here to get it back. Rose Farmer Neutral is how this all started out. She owned a royalty interest in oil-producing land in Hamilton County. She didn't own an acreage. She owned a royalty interest. She just got proceeds from pumping oil. And a company named Countrymark, which is also the cashier, bought the oil and paid the royalties to Rose Neutral and the other royalty holders, of which she was just a fraction. And for the taxes paid in 1999, or due in 1999, payable in 2000, New Gold's taxes weren't paid. And the Groomes bought those taxes at the annual Hamilton Tax Sale. Now, of course, that didn't mean that when the tax sale was over that the Groomes owned the royalty interest. Far from it. What they got was a certificate, which is basically a receipt, which shows what they paid and the legal description of what they paid for. And it also set forth that this tax sale was redeemable, that New Gold could redeem property within 30 months. And I mention that, the 30 months, specifically because Appellee mentions it, because that was just on the certificate, which the Groomes got. But wasn't it filed within, stated that it was two years rather than 30 months? The statute is 24 months, correct, Your Honor. And Mr. Groove picked up on that right away. And when the formal notices went out to give New Gold a chance to redeem, both said 24. No one was outside of the clerk. And of course, when he entertained the petition for tax, Mr. Groome was notified within 30. So the clerk, the county clerk issued notice to New Gold at her, the address that the clerk had for sending her the tax bills. And also, at the behest of the Groomes, the clerk also notified Country Market, buyer of the oil. They wanted New Gold to find out about this. It's kind of a good investment if you can buy taxes and get it redeemed, get a nice investment on your money. Whereas if you end up with a deed, it's kind of a pick for the Pope. So there's no reason to deploy redemption. There's every reason for the tax buyer to help get it redeemed. So they went the extra mile and said, Country Market, we know you can tell us. But maybe you can tell the owners that this can be redeemed and get it done. The Groomes waited two years, statutory two years. Unbeknownst to the Groomes, New Gold had died. And their interest had passed to the Gullies, her interest rather. And when the redemption period ended, it wasn't redeemed. And the Groomes presented a petition to the Circuit Court for a tax deed. And the Circuit Court entered an order directing the County Clerk to issue a tax deed for the New Gold mineral interest to the Groomes. That was a final and appealable judgment. The time for appealing had expired. And then the Gullies petitioned under Section 2-1401 to have that order set aside to void the deed. Now, of course, 2-1401 used to be, we called it Section 72. But it's a general statute for vacating judgments within two years. Meanwhile, Countrywide, the oil purchaser, filed suit against the Groomes and the Gullies. An interpleader wanting to know who to pay the proceeds to on oil that was being produced. They wanted to know who to pay. And that's how Countrywide, I mean, Countrymark gets involved. The Circuit Court consolidated those two proceedings, the interpleader and the 2-1401. And after bench trial, set aside the deed. Vacated the order on the grounds that the Groomes, my clients, procured the tax deed by fraud or deception. The judge didn't make up those grounds. That's what the Gullies alleged. And they kind of had to. Because the property tax code restricts the grounds on which tax deeds are contestable. You can't contest them on just anything. If you don't do it on direct appeal, you've got to do it under 2-1401 or they'll be contestable by statute. And if you do go under 2-1401, as the Gullies did, there are only four grounds of statute specifically that you can go by. And three of those are obviously not applicable. And the only one that's obviously not applicable is procured the tax deed by fraud or deception. Now, before I go any farther, the fraud in this case is a document. It's not just a document. It's a sentence of document. And beyond that, it's not just a sentence. It's eight or so words near the end of the sentence. And I think it would help the Court a great deal to hold that in hand right now. If you would pick up the Pelham's brief, I'd appreciate it, the white cover brief. And there's an appendix tab. And if you just flip that appendix tab from right to left, you should be looking at the appendix table of contents. Okay? If you just go one more page, then, you're looking at the order to deliver a tax deed that the Circuit Court vacated when it foiled the tax deed. Now, of course, when the Circuit Court orders somebody to do something, there's a summary. In this case, the Circuit Court wasn't ordering the Gullies to do anything or the New Bowl or the Brooms. He was ordering the County Clerk to deliver a tax deed to the Grooms. And where you'll see that is the last five lines of that page. That's the operative sentence. That's the broad sentence right there. That's what's got us in court here is that sentence. And you'll notice that the sentence doesn't end on that page, that it goes over onto the following page. And you might want to go over to that next page, right to that top line right there, the second page of that order. And then now I'm going to read from the front to catch you up. It says, County Clerk shall deliver to the Grooms a tax deed to the mineral interest, most farmer New Bowl, and to the below, described real estate, see that, including all impounded proceeds held by Country Mark. See that? That's why we're here. Those words on that page, including all impounded proceeds held by Country Mark. If it wasn't for that, we wouldn't be here. So, the Clerk, County Clerk's instructions are to deliver a tax deed, and then, of course, farther down on that page there's a legal description, to this mineral interest, including all impounded proceeds held by Country Mark. Now, if you go one more page, and I have a lot of pen books, you're going to be looking at the tax deed. It's two pages, and I'm not going to read anything from it, and I'm not going to ask the Clerk to read it. But, when you do read it, when the Clerk's reading it, you will find certain things that are there. No mention of Country Mark, no mention of proceeds, no mention of impounded proceeds. That's right. Despite the language in the order, the Clerk did not deliver a deed including all impounded proceeds held by Country Mark. It didn't happen. It did what? It didn't happen. The Clerk did not deliver the deed that the order purported to require. So, how did that language get in there? Well, Mr. Groom wrote it. He's not an attorney, and he didn't realize that even if he wrote it, it wouldn't make any difference, on account of the County Clerk can only convey what the County Clerk has, and that was just their legal interest. He didn't even realize that. I'm not saying that he wasn't entitled to some or all of the impounded proceeds, and he meant well then, it's just that it doesn't make any sense in the vehicle of petitioning for a tax deed to ask for it there. It makes sense to do it kind of like Country Mark did it, and then plead somebody or sue for it, but it doesn't make any sense in a tax deed proceeding to put your plea for impounded proceeds there. I mean, where would you file something like that? What's the chain of title? It doesn't make sense. Well, that's our first argument. We just got three that I want to make today, and that's the first one, is how could the grooms have obtained or procured the tax deed by fraud or deception by including impounded proceeds in the order if they didn't make it into the deed? And the answer is it makes no sense. It doesn't make any sense at all. And this judgment ought to be reversed. I mean, that ought to dispose of it right there. But there's one, point two, and I promise there's only three, three letters, but I'm sitting down for that. Two, remember we were talking about the property tax code and how it says that there's just four grounds, and the only one that made any sense here was tax deed had been procured by fraud or deception. That's the legislature's words. It's not Gulley's or mine. It's the legislature's. Fraud or deception. It doesn't say attempted fraud. It doesn't say attempted deception. It doesn't say misstatement. The legislature didn't define fraud for us, so it just said fraud. Therefore, we go to the common law definition of fraud, and what is the common law definition? Well, five elements, but the important one, not to bore the court, is injury. If you don't have injury as a result of a fraud, if you don't rely on it to your detriment, you're not the victim of a fraud. Fraud has not occurred, but it's been attempted fraud at most. Where is the Gulley's injury? Well, what are we talking about? We're talking about impounded proceeds, held by Countrymark. That's what we're here about. Countrymark, the oil buyer, has the proceeds. This is a consolidated case. The Gulley's wanted to devoid it. Countrymark filed the inner pleader to see who to pay the impounded proceeds to. Brooms didn't get the proceeds. Countrymark's got the proceeds. If Countrymark had paid the proceeds to the Brooms, then the Gulley's would have injury. Fraud uses a different case entirely. But the fact that this inner pleader exists and is consolidated with this 2-1401 case means there is no legal way that the Gulley's could be a fraud. It just couldn't be. In other words, Countrymark still has the money? On this record, yes. Countrymark's still got the money, still looking for direction. I know there was a state proceeding in the Circuit Court. I don't know what were the results of that. I'd say either Countrymark has paid the Gulley's the proceeds, or Countrymark's still holding them if there was a state. But either way, no damages. The only way there's damage is injury, I should say, is if the Brooms got it. And by this judgment, the Brooms didn't get it. By moving the inner pleader, they didn't get it. One more point, and then regardless of how much time we've got left, I'm going to sit down. And that is race judicata. How many times did I write race judicata in appellant's brief? How many times did you find it in a police brief? The Gulley's are not going to talk to you about race judicata. They don't want to hear it. The only way you're going to hear about race judicata from the Gulley's is if you ask them about it. This is a civil case, but an awful lot of these 2-1401 cases are prisoner cases. Prisoners go, well, I've got direct appeal, that didn't work. I've got post-addiction, that didn't work. Behaviorist, that didn't work. Let's try 2-1401 and see if that works. And that's why Kate Courts, Illinois, until they're blue in the face for telling these prisoners, look, you had a direct appeal. Every single issue you raised in your direct appeal is race judicata. You can't base it in section 2-1401. You can't do it. Oh, that's a new issue that you did not raise in your direct appeal? You wanted your lawyer to raise it, but he didn't? I'm sorry, that's race judicata. Because you could have raised it on direct appeal. Race judicata for purposes of 2-1401. Then you get the prisoner in the plea guilty and didn't appeal. Didn't get rolling on things until the time for the appeal expired. But, Your Honor, I didn't have an appeal. How can it be race judicata? No, I've cited the cases for you. You claimed that you could have raised it if you had an appeal. A race judicata. Now, section 2-1401 is not like a post-trial motion. It's not like an appeal. It's the start of a new proceeding. And in every case, when that new proceeding starts, the question that's got to be asked is, well, how much of this is race judicata? Going back to the appendix, that first document, that order with the five lines at the bottom and the one on the next page, that's got a file stamp on it. It's 2003. That was filed with Circuit Court in Milton County. There was no reason that the Gullies or their predecessors, if they'd been taking care of business, couldn't come in and appeal. And if they had, this case wouldn't be what it is today. They didn't do it. This stuff about the impounded proceeds, all on the right, race judicata. Race judicata. There's no way this should have been brought up. Now, this might seem like a pretty weak ground to bring up, the impounded proceeds thing, since it didn't make it into the deed. But I'd like to point out that this case gets here only after not only a bench trial, but years of discovery. I mean, this deed was transferred in 2003, recorded in 2003. Where has it been all this time? And the answer is that the Gullies at first claimed that the grooms had committed fraud and deception in the way that they had notified Newport that they hadn't complied with the statute, that they hadn't done their job due diligence, and therefore were entitled to the taxes. That's all in their section 2-1401 petition. But they abandoned it. That's not even part of the case anymore, because basically all those years of discovery proved that the grooms they were on the right, that even the extra miles were undemocratized. The grooms committed no fraud, committed no deception, not legally, not morally. They're entitled to their tax deed, and we would ask that the court reverse the 2-1401 judgment and order the circuit court to reinstate the grooms' tax deed and further to dispose of the proceeds held by Countrymark in some way other than, well, you committed fraud, you don't get it, which is what it did. Send it back to the appropriate disposition of the proceeds. If there are no questions. I don't think there are. Thank you, counsel. Thank you. Counsel? I'm pleased to report, Your Honors. Jim Hansen, here in Mount Vernon, representing the Fedele brothers, I call them. They're two boys, Trent and his brother. I always seem to deal with Trent. Your Honors, as you always hear from us attorneys, we see it a different way. We wouldn't be up here on the field. This case is not a race-to-category case. It's a case of a motion to vacate a tax deed, an order to direct a tax deed, filed by me some years ago. Counsel was not involved back then. But, yes, there was some early discovery that didn't pan out as far as the notices, so we abandoned that. But the real issue in the case is the one that I offered in my appeal when I proved up Mr. Groom's attempt to acquire more than what he was entitled to by using these four horse. Specifically, the language that was pointed out by counsel is exactly the point here. But he's saying there was no injury, no harm, no foul, because it didn't make it into the text. That's what he's saying. It was presented to the trial court other than the fact that we litigated this thing for years to try to get our interest back. And I will assert this, Your Honor. There were consolidated cases. There was a claim that demands in paragraph 11 or 12 of the country-marked lawsuit where Mr. Groom was demanding those proceeds. And in that same allegation, Your Honors, they recite that the proceeds at that time had accrued between 1999 and 2004, so some part of those $25,000 that are allegedly admitted in the pleadings had accrued before the tax deed. And so I make issue with that as part of the record, Your Honor, but Your Honor said the ability to make those determinations as well as the court was outside their reading of the evidence in the case. But here's what really happened, Your Honors. And I say really. That's what I believe the evidence and what Judge Vaughn indicated. Mr. Groom goes to a tax sale and he buys a royalty interest. And Your Honors know that a royalty interest is deemed an interest in real estate, but it's a right to receive income based on a lease. And when that lease – if that lease would ever end, then your royalty interest would end on that lease, but you wouldn't own the fee interest. You would just own the royalty interest in that particular lease. Now, this is your law that you guys – I'm sorry. Your Honors have laid down and passed proceedings. No disrespect intended. Basically, in this case, when he added that language, and the assertion was made that it was an innocent adding of the language, and that's what the hearing was about. How did this language come to be there? Why was it there? He heard – Judge Vaughn heard the testimony. The testimony in the record was, well, I just put it in there because other people put it in there. Then he said, I put it in there because you never know whenever – how much oil is made before or after a particular date you get the lease. But when examined on the record about the what about, you say even before you ever went to the tax sale. In other words, he's asserting I want the proceeds even before the tax sale. He had no explanation, or his explanation was, well, that's just what everybody else puts in there. The bottom line is, Judge, that language that was pointed out to you is even broader, Your Honors, than what's asserted, in that it says all oil, gas, and other minerals. And then Bill talks about proceeds, okay, whether before, during the period of redemption, or after. So even in his orderings, he's not just asking for the royalty interest. He's saying all oil, gas, and other minerals, and Your Honors are aware that other minerals could include anything else, coal rights, anything else. He unilaterally broadened that, and the issue became my burden of proof to put forward whatever evidence I could as to whether that was the type of fraud that is necessary for a court to set aside a vacated order. In this case, it's a heightened level, clear and convincing evidence of an intent, wrongful intent, and the cases say intent, I brought my notes down here, wrongful intent, fraudulent conduct, or acts to deceive. I submit to you that Judge Vaughn, who entered the original order, felt that I had proved sufficiently acts to deceive him when that was stuck in the document. Now, counsel suggests that because the deed itself didn't say anything about proceeds, that that in some way affects the case. I submit the order gave rise to the deed, and if you look at that deed, it's prepared by Mr. Broom. So the fact that Mr. Broom didn't put in, it's said right on the exhibit, it was submitted, Your Honors. I don't have the reference, but if you look at that deed, it'll say prepared by William Broom. So the clerk didn't prepare that deed, the recorder, Mr. Broom did. Who's to say you wouldn't come back later? Oh, yeah, the order says, I say who's to say, I mean, the order says I get all the proceeds, I'm going to give you a revised deed that has additional language. What happened in this case is, had it not been for that conduct, that conduct, I believe I could not have proven some sort. The fact that he didn't catch my people or didn't see them, there was a burden I had to show that there was some culpable conduct in connection with that. Couldn't find enough on that, although there was some evidence we discovered, I abandoned that. But in this case, I did not abandon the fact that you can't take my folks' property by filling in language unilaterally and say, well, I just did it for no good reason. So it is my burden, it is my client's burden, and we put a lot of evidence, including, Your Honors. You know the record's quite thick, and part of that's because some of it's duplicated. But one of the issues I raised to the court was that Mr. Broom is a sophisticated tax purchaser, an oil man. He knows these things. It's not like you or I perhaps wandering in and saying, I don't know what a working interest is or whatever. He is sophisticated. It was admitted in the testimony and through a request to admit. In addition, he has dozens and dozens and dozens of tax deed proceeds. And if you review the exhibits in the record, you'll find that even after he was given notice that this motion to vacate was filed, even after he continued to place this language in other tax deed proceeds, which I admitted in the evidence to allow the judge to consider the wrongful intent, the scheme to defraud, and those types of things, the relevance of that. He also testified that he originally had an attorney assisting him in connection with doing tax deed proceeds, and then he decided he was going to do them on his own. I submit to you, the court, Judge Baum heard the evidence. I did file a motion, something akin to a motion for summary judgment early on, while we fleshed out all the relevant issues with Judge Desmond at that time, did not, he said, basically saying, I'd like to hear from the defendant or from the petitioner in the tax deed case. And we had that evidence. We took discovery. We had that evidence. And it's all before you. Finally, I probably talked too fast, and I apologize, Your Honors, but finally, there's a significant issue here that deals with jurisdiction. Your Honors know that a tax deed is an interim action, and it begins with the assessment of the taxes and the judgment being entered for the tax sale, and that's all based on the description. Your Honors, you know from looking at the documents that the description basically says, .04016667, loyalty interest, Warren, 2-1, Section 1, Township 6, Range 7, Pembroke Township, Hamilton County, Illinois, apartment index number, it's a very straightforward description. It does not say all rights. It does not say crude oil proceeds accruing before. It doesn't say those things. I submit to you that when the original thing goes within a month or a few weeks after, it does not include anything about this language taking notice that we're going to want crude oil proceeds and those things. It wasn't until two years later when the petition for tax deed was filed that the petition includes that language. But then we have a publication that doesn't include that language. Now, I submit, Your Honors, if I want to take your car because I can't find your car, and in some way acquire jurisdiction over some piece of property you have because I can't find you, I can do that. But I have to file an affidavit of publication, describe the interest of seeking to acquire jurisdiction over, that's not done. None of that language is in the certificate of publication that was a part of the record. All it has in the certificate of publication is just that minimal description that was contained within the original certificate of purchase. So in addition, I mean, I've made these arguments before, but I said what gave the court jurisdiction to take crude oil proceeds that were generated before the tax deed proceeding ever took place? What gave the court the jurisdiction to award crude oil proceeds that were approved during the penancy of the redemption period? I submit to you the only way the court would have had that jurisdiction would have been an incident to the tax deed proceeding itself. And it was not described. That, to me, is wrong. I mean, I guess if they had that, and I'll ask Your Honor to look at the record, because later on, Mr. Groot starts doing that. He starts putting in the taint notice on his acquired interest together with the ‑‑ he starts adding that language to his taint notices and his other documents. So I'm submitting to you that the evidence ‑‑ I believe the evidence was sufficient for Judge Wong to find that an intent to deceive for fraud took place. Now, these orders are always prepared by the petitioner? My experience is whoever is doing the tax deed, whether it's a lawyer or I guess in this case Mr. Groot, they draft the order. The judge has a whole ‑‑ many times the judge has a whole litany of tax deed matters and enters them rather, I'm going to say not frankly, but I don't know, there's a lot of ‑‑ there's a report of proceedings filed, what have you. In this case, I submit to you that had someone said, by the way, Judge, we're trying to get some proceeds that were acquired before we ever got the tax sale, I think if you were ours, you would have questioned that. Because the law in the state of Illinois is that oil rights or royalty interest is a right to receive the proceeds from oil produced from the land, but once the oil has come out, it's money, then it's personal property. Or once it's come out and it's oil on the surface, it's personal property. So the ‑‑ that's why when we do tax sales, if you happen to get a hotel in your tax sale, or you happen to get a piece of property that has some royalty accrued before, you would maybe say, well, why have we not done the rent for the last three years, unless one of two things, that money had been described as being in an account or something like that, but in this case that was not the case. I don't know if I answered your question, Your Honor. I also want to point out to you, because of the voluminous nature of the record, that the testimony of Mr. and Mrs. Groom, who was husband and wife, they all had stipulated and agreed that he pretty well handled it all, and they were bound together by whatever finding there was done. I mean, it's a technical argument, but that was the way it proceeded. I have no reason to know that Mr. Groom dealt with these issues specifically, but he as the agent was involved. The problem I have, Judge, if you ‑‑ I included in there, I think there's several dozen I included, there's lots more than that. Many of the tax purchasers are sticking this language in there now, and that's part of the reason that I'm suggesting to you, Your Honor, that when you read the interfleer that was filed by Countrymark, they're sitting out there with these orders coming in, and when you give money that approved even before tax deeds, they're saying, I want somebody to direct me whether I'm supposed to do that or not. In this case, it's just limited to these people, but it has ramifications to many other cases. So I don't know if I have any questions, Your Honor. I don't believe we do. I would ask you ‑‑ I would thank you, but I would ask you to, as part of your deliberations, take a look at some of the documents and certainly the testimony of Mr. Groom about this matter, and I appreciate your time. Thank you, Counsel.  Thanks again, Your Honor. You can't get at proceeds with a tax deed. I don't think it realizes the full importance of arguing here. The court doesn't have jurisdiction over it, that's right. They're outside the business of the court issuing the order for a tax deed. All the jurisdiction of the tax deed court is limited to the legal interest that taxes were paid on. That's all that's before the court. That's all the clerk has authority or right to deed on. Just that language, just the literal legal description. There's ways to get at impounded proceeds. A very credible argument can be made that in a pure royalties case like this, the tax debtor not having paid the taxes probably isn't entitled to money. I mean, it's certainly not a frivolous argument. But the court doesn't even get to that. The point is that if you want impounded proceeds, that's a separate proceeding. You get your deed, fine, you're not going to get in there. Now you've got to go to the courthouse and file some sort of a complaint to get your proceeds. That's the only way you can do it. It's totally outside the jurisdiction of the tax deed court. Just the legal description. That's as far as they can go. The interim proceeding, that's right. Couldn't this be used as evidence in a further proceeding? That a judge signed off an order saying that they were entitled to these impounded proceeds? Well, that's why I pointed out to you last week, that's why I pointed out that who is directed to do something in this case? In that order, who is directed to do something? It's the county clerk to deliver a deed. That's what the order is. The county clerk. It's not telling anybody else to do anything. It's certainly not telling the country clerk to do anything. It's just, it's like I was scrubbing the lyrics to Bob Dylan's songs on the margin of the order. And so what? But it doesn't have any effect. Only the legal description has an effect in the order to deliver a tax deed thereby. Some of the first words we heard was, Mr. Gruen, attempt to acquire these proceeds was fraudulent. The other thing was acts to deceive. Well, again, attempt isn't what the statute requires.  Not acts to deceive. Fraud, deception. Acts to deceive is the first of the five elements of fraud. No fraud here. On page 22, if you look at page 22, the blue brief, twice that's what the gullies are arguing is that an attempt is enough. That's not what the legislature says. The legislature says fraud. It's a good stretch, I think. It's a good stretch that Gruen's heard the term. They're not going for just impounding proceeds. They're going for something more. And it's a good stretch to come in here and argue other behavior and other cases, whatever that might be. You don't think they wanted those additional proceeds? Oh, I think they do. And I think they're entitled to some of them. I think it's not black and white. I think they're entitled to some of the proceeds. And I don't know which proceeds. And Countrywide had an attachment or complaint on the defender pleader. It's a lot of small print, which apparently summarizes the proceeds. And either I'm going to lie or screw with one or the other, because I can't make anything out of it. I'm not saying that I know we're entitled to all the proceeds. I'm not conceding that we're not entitled to any of them. I'm just saying that the way to go is not to say, the Gruens got this tax deed by falling into deceit, and therefore they lose the tax deed and the gullies get all the proceeds. No, no, that doesn't make any sense. And Countrymark has probably got the answers. Countrymark probably knows who became entitled to what way. He can probably answer these questions. But we've got to go back to the circuit court and figure that one out. That's all I'm saying. Thank you, Counselor. No more questions. No more questions. Again, we ask that the 214.1 be reversed and that the case be remanded and that the deed, but with orders from the deed, be reinstated. Thank you. Thank you, Counselor. We appreciate the briefs and arguments of both counsel to take the case under advisement. Thank you.